IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KASSANDRA NIEVES, Individually                                                    PLAINTIFF
and as Personal Representative
of the Estate of Juan Nieves, and
His Surviving Heirs and Dependents

v.                              No. 3:15CV00350 JLH

COOPER MARINE & TIMBERLANDS CORPORATION;
LOGISTIC SERVICES, INC.; STEEL DYNAMICS
COLUMBUS, LLC; KINDER MORGAN BULK
TERMINALS, INC.; and KINDER MORGAN MARINE
SERVICES, LLC                                                                     DEFENDANTS

## OPINION AND ORDER

Juan Nieves suffered a fatal accident while unloading a barge for Kinder Morgan Bulk Terminals, Inc., in Arkansas territorial waters in the Mississippi river. Kassandra Nieves, as the representative for the estate of Juan Nieves, commenced this action against Cooper Marine & Timberlands Corporation, Logistic Services, Inc., Steel Dynamics Columbus, LLC, Kinder Morgan Bulk Terminals, Inc., Kinder Morgan Marine Services, LLC, and Kinder Morgan Energy Partners, L.P. This Court granted Kinder Morgan Energy Partners summary judgment and dismissed it from the case. Document #175. The claims that remain in the amended complaint are as follows: wrongful death and survival claims against Cooper Marine based on its negligence; wrongful death and survival claims against Steel Dynamics under negligence and strict products liability theories; wrongful death and survival claims against Logistic Services under negligence and strict products liability theories; and wrongful death and survival claims against Kinder Morgan Bulk Terminals and Kinder Morgan Marine Services for their negligence. Nieves seeks pecuniary and nonpecuniary—including punitive—damages under both general maritime law and Arkansas state law.

Through separate motions Cooper Marine, Logistic Services, Steel Dynamics, and the Kinder Morgan defendants all move for summary judgment on Kassandra Nieves's claim for damages under Arkansas state law. These same defendants also move for summary judgment on Nieves's claim for punitive damages under both general maritime law and Arkansas law. Cooper Marine and Logistic Services move for summary judgment on Nieves's claim for nonpecuniary damages under general maritime law. Finally, Cooper Marine and Kinder Morgan Marine Services move for summary judgment on any claim based on the unseaworthiness of their vessels. These motions are well-suited to be considered together and ruled on jointly. For the following reasons, the motions are granted in part and denied in part.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

This Court has set out the facts of this case in prior orders. It is sufficient to note that no party contests that Nieves was unloading steel coils from a barge on the Mississippi river in Arkansas territorial waters at the time of the accident. The issues raised in the defendants' motions are purely issues of law regarding the law and remedies that apply to the claims in this case. As such, summary judgment is "particularly appropriate." *Crain v. Bd. of Police Comm'rs of Metro. Police Dep't of St. Louis*, 920 F.2d 1402, 1406 (8th Cir. 1990).

The accident at issue here undoubtedly falls within admiralty's domain. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206, 116 S. Ct. 619, 623, 133 L. Ed. 2d 578 (1996) (involving pleasure craft accident in territorial waters); *Sisson v. Ruby*, 497 U.S. 358, 361-367, 110 S. Ct. 2892, 2895-2898, 111 L. Ed. 2d 292 (1990) (involving fire on noncommericial vessel at marina on navigable waterway); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 n.5, 102 S. Ct. 2654, 2658, 73 L .Ed. 2d 300 (1982) (involving collision between two pleasure crafts on navigable waters and noting that when a watercraft sinks in navigable waters and bears a substantial relationship with traditional maritime activity, admiralty jurisdiction is appropriate). When a court exercises admiralty jurisdiction, it applies substantive admiralty law. *Yamaha*, 516 U.S. at 206, 116 S. Ct. at 623. This does not mean, however, that state law is automatically preempted or displaced. *Id.* Indeed, a fundamental feature of admiralty law is that state law sometimes applies. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 546, 115 S. Ct. 1043, 1054, 130 L. Ed. 2d 1024 (1995).

Maritime wrongful-death actions have a somewhat turbulent history. As most do, the Court begins its review of maritime wrongful-death law with *The Harrisburg*, 119 U.S. 199, 7 S. Ct. 140, 30 L. Ed. 358 (1886). There, the Supreme Court held that general maritime law did not recognize a cause of action for wrongful death. *Id.* at 213, 7 S. Ct. 146-47. The Court reasoned that wrongful-death actions are statutory creations and may not be judicially added to general maritime law—a type of federal common law that has developed through case law. *Id.*; *see also Yamaha*, 516 U.S. at 206, 116 S. Ct. at 624. Nevertheless, federal admiralty courts allowed state wrongful-death

statutes to provide a remedy. *Id.* at 207, 116 S. Ct. at 624.[1] In *Western Fuel Co. v. Garcia*, 257 U.S. 233, 42 S. Ct. 89, 66 L. Ed. 210 (1921), the Supreme Court blessed this practice when it held that a widow of a maritime worker killed in California's territorial waters could supplement general maritime law by bringing a wrongful-death action under California law. *Id.* at 238-42, 42 S. Ct. at 89-90. The Supreme Court later held that state survival statutes may be applied in cases where the injury occurs in territorial waters. *See Just v. Chambers*, 312 U.S. 383, 391-392, 61 S. Ct. 687, 692-693, 85 L. Ed. 903 (1941). The state of admiralty law remained this way for many years: no wrongful-death remedy under general maritime law but state statutes could supplement federal law and provide a cause of action.

The Supreme Court revisited *The Harrisburg* in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 375, 90 S. Ct. 1772, 1775, 26 L. Ed. 2d 339 (1970). *Moragne* overruled *The Harrisburg* and held "that an action does lie under general maritime law for death caused by violation of maritime duties." *Id.* at 409, 90 S. Ct. at 1792. *Moragne* involved a widow of a longshoreman killed in Florida territorial waters who had brought suit under Florida's wrongful-death and survival statutes. Following *Moragne*, the Supreme Court then decided *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573 94 S. Ct. 806, 39 L. Ed. 2d 9 (1974). In *Gaudet*, the Court held that a widow of a longshoreman who died aboard a vessel in navigable waters could recover for loss of support, services, society, and funeral expenses in a wrongful-death action. *Id.* at 591, 94 S. Ct. at 818. The Court recognized that nonpecuniary damages are not recoverable under the Death on the High Seas Act noting that the Act does not extend to state territorial waters. *Id.* at 588 n.22, 94 S. Ct. at 816.

---

[1] Congress also supplied an avenue for certain persons by enacting the Jones Act and the Death on the High Seas Act.

Although *Gaudet* explained that "[t]he term 'society' embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection," the Court expressly excluded damages based on mental anguish or grief. *Id.* at 585 n.17, 94 S. Ct. at 815. Damages for mental anguish or grief are "not compensable under the maritime wrongful-death remedy." *Id.* The Court subsequently extended *Gaudet*'s ruling to nonfatal maritime injuries to longshoremen occurring in state territorial waters. *See Am. Exp. Lines, Inc. v. Alvez*, 446 U.S. 274, 281, 100 S. Ct. 1673, 1677, 64 L. Ed. 2d 284 (1980).

Some of the defendants contend that *Gaudet* is no longer controlling and that Nieves is barred from recovering nonpecuniary damages, such as for loss of society.[2] Congress overruled *Gaudet* in part when it passed the 1972 amendments to the Longshore Act. These amendments barred "recovery from shipowners for the death or injury of a longshoreman or harbor worker resulting from breach of the duty of seaworthiness." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 28, 111 S. Ct. 317, 323, 112 L. Ed. 2d 275 (1990). Otherwise, *Gaudet* has not been overruled. These defendants rely on *Miles* and *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S. Ct. 2010, 56 L. Ed. 2d 581 (1978), to support their argument that, despite *Gaudet*, wrongful-death damages are limited to pecuniary losses. These two decisions, however, addressed cases that arose under statutes other than the Longshore Act, and in them the Court distinguished but did not overrule *Gaudet*. *Miles*, 498 U.S. at 33, 111 S. Ct. at 326 (Jones Act); *Higginbotham*, 436 U.S. at 625, 98 S. Ct. at

---

[2] Logistic Services and Cooper Marine advance this argument. Steel Dynamics acknowledges that nonpecuniary damages for loss of society are available under general maritime law. The Kinder Morgan defendants are silent on this point, arguing only that Arkansas's wrongful death statute is preempted.

2015 (Death on the High Seas Act). It is true that *Gaudet*'s holding has been construed narrowly—"*Gaudet* applies only in territorial waters, and it applies only to longshoremen"—but Nieves was a longshoreman in territorial waters. *Id.* at 31, 111 S. Ct. at 325; *see also Moore v. M/V ANGELA*, 353 F.3d 376, 383 (5th Cir. 2003) ("The loss of consortium award is permissible in this § 905(b) case.").

The defendants also contend that Nieves is unable to recover punitive damages. Logistic Services stands alone in arguing that because punitive damages are a type of nonpecuniary damages, they are not compensable under general maritime law. The remaining defendants assume they can be awarded when the facts support such an award but argue that the facts do not support an award in this case. Logistic Services so argues in the alternative to its contention that maritime law does not permit punitive damages.

In *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 129 S. Ct. 2561, 174 L. Ed. 2d 382 (2009), the Supreme Court considered whether punitive damages are available under general maritime law for the willful and wanton disregard of the maintenance and cure obligation. The Court noted that "[p]unitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct." *Id.* at 409, 129 S. Ct. at 2566. The Court then explained that "[t]he general rule that punitive damages were available at common law extended to claims arising under federal maritime law." *Id.* at 411, 129 S. Ct. at 2567. Addressing the issue before it, the Court concluded that "[n]othing in maritime law undermines the applicability of this general rule in the maintenance and cure context." The Court then considered whether Congress had legislatively altered this rule and held that Congress had not. *Id.* at 415, 129 S. Ct. at 2569.

*Townsend* leaves an important framework in its wake. *See Doyle v. Graske*, 579 F.3d 898, 906 (8th Cir. 2009) (adopting the *Townsend* approach). To determine whether punitive damages are available in a maritime tort action, a court should approach the question by noting that punitive damages have long been recoverable at common law and that the common-law rule allowing punitive damages extends to maritime torts. *Townsend*, 557 U.S. at 415, 129 S. Ct. at 2569. The Eighth Circuit has not directly addressed whether a longshoreman may recover punitive damages against negligent third-parties, but it has recognized that punitive damages are recoverable under general maritime law. *See Graske*, 579 F.3d at 906. A leading admiralty treatise, likewise, recognizes that punitive damages may be recovered under general maritime law. 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 5-18 (5th ed. 2011). The remaining question is whether any federal statute undermines the availability of punitive damages for Nieves. Unlike the Jones Act and the Death on the High Seas Act, the Longshore Act does not create a statutory cause of action for negligence. *See Alvez*, 446 U.S. at 281, 100 S. Ct. at 1677 (explaining that "general federal maritime law is a source of relief for a longshoreman's personal injury just as it is a source of remedy for wrongful death" (internal citation omitted)). Nieves's punitive damages claims, then, are governed by general maritime law, which, as *Townsend* holds, is in accord with the common-law rule permitting recovery for punitive damages.

The Eighth Circuit Committee on Model Jury Instructions (Civil) has provided the following pattern instruction for punitive damages in admiralty and maritime cases:

> 17.72 DAMAGES: PUNITIVE
> If you find in favor of (name of plaintiff) and against (name of defendant) under Instruction(s) , and if you further find that (name of defendant) acted willfully and wantonly with reckless or callous disregard for the rights of others, or acted with gross negligence or actual malice or criminal indifference, then you may, but are not required to, award punitive damages against that defendant. The purpose of an award

of punitive damages is to punish the defendant and to deter [(it) (him) (her)] and others from acting as [(it) (he) (she)] did.

Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit (2017) at 458 (citing *Gamma-10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1254 (8th Cir. 1994)). Thus, under the Eighth Circuit standard, Nieves has the burden of showing that the defendants' misconduct was worse than mere negligence. The Eighth Circuit standard requires gross negligence or a willful and wanton act that recklessly or callously disregards the rights of other. The Supreme Court has similarly limited an award of punitive damages to cases of "'enormity,' where a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493, 128 S. Ct. 2605, 2621, 171 L. Ed. 2d 570 (2008) (internal citations and footnote omitted).

Nieves says punitive damages are recoverable from each defendant because each ignored foreseeable risks. Nieves says that Logistic Services and Steel Dynamics should have known that using wooden saddles instead of saddles or wedges made from a different material was unsafe. Nieves contends that Steel Dynamics chose the wooden saddles "without any thought or analysis of the consequences" in order to save money. *See* Document #203 at 14. Citing the testimony of various employees of Logistic Services, Nieves argues that Logistic Services was aware that the saddles could be crushed by heavy steel coils. Even if true, these facts do not reflect conduct or negligence of "enormity," marked by "outrageous" conduct, "willful" or "wanton" disregard, or "gross negligence." That alternative methods to secure the coils were available does not demonstrate that it was grossly negligent to use the saddles.

8

Nieves says that Cooper Marine and Kinder Morgan Marine Services should have rejected the barge because the steel coils were not properly stowed and secured, but, again, the evidence viewed in the light most favorable to Nieves fails to show the kind of misconduct for which punitive damages may be awarded.

Last, the defendants argue that federal maritime law preempts Nieves's claims under Arkansas's wrongful death and survival statutes. The defendants' arguments draw on categories that have been created by statute as well as by the Supreme Court. The relevant categories here are those defined under the Longshore and Harbor Workers' Compensation Act and by the Supreme Court in *Yamaha*.[3]

It is undisputed that Nieves was doing the work of a longshoremen and covered under the Longshore Act. *See* 33 U.S.C. § 902(3). The Longshore Act addresses three different relationships of relevance to this case. Section 905(a) concerns the relationship between an employee and his statutory employer; section 905(b) concerns the relationship between an injured employee and a negligent vessel; and section 933 concerns the relationship between an injured employee and negligent third parties. This Court previously dismissed the third-party claims against Nieves's payroll employer, Temps Plus, Inc., because Temps Plus was covered by the exclusivity provision

---

[3] It is important to note for this case the differences between high seas and territorial waters and seamen and longshore or harbor workers. The Death on the High Seas Act applies to all deaths "caused by wrongful act, neglect or default occurring on the high seas beyond 3 nautical miles from the shore of the United States." 46 U.S.C. § 30302. The Jones Act covers "[a] seaman injured in the course of his employment." *Id.* § 30104. The Longshore and Harbor Workers' Compensation Act applies to an "employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States." 33 U.S.C. § 903(a). As a workers' compensation statute, the Act governs the relationship and liability between employees and employers. *See id.* § 905(a). There is, thus, a statutory gap in territorial waters (where the Death on the High Seas Act does not apply) involving nonseamen (to whom the Jones Act does not apply) who are not within the scope of the Longshore Act's compensation scheme.

9

under section 905(a). *See* Document #175. For the purposes of this order, Nieves's claims against the remaining defendants are not governed by the provisions of section 905(a).[4] Section 905(b) addresses vessel negligence and states that an injured employee "may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title." The subsection, however, does not allow an injured employee to assert a claim against a vessel based upon the warranty of seaworthiness and makes the remedy provided in the subsection "exclusive of all other remedies against the vessel except remedies available under this chapter." *Id.* § 905(b). The Supreme Court has explained that section 905(b) was included in the 1972 amendments to the Longshore Act "to eliminate the shipowner's liability to the longshoreman for unseaworthiness," a claim previously reserved to seamen as an incident of their contract but later extended to longshoremen. *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 262, 99 S. Ct. 2753, 2757, 61 L. Ed. 2d 521 (1979); *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 92, 66 S. Ct. 872, 876, 90 L. Ed. 1099 (1946).[5]

Cooper Marine and Kinder Morgan Marine Services are the only defendants with vessels that might be governed by section 905(b). Cooper Marine owned the barge that sank and on which Nieves was working, and Kinder Morgan Marine Services owned the tugboat that took custody of

---

[4] Kinder Morgan Bulk Terminals maintains that it is Nieves's borrowing employer. The Court has twice denied motions for summary judgment by Kinder Morgan seeking employer immunity under section 905(a). *See* Document #104; Document #238.

[5] Cooper Marine and Kinder Morgan Marine Services move for summary judgment on any claims based on unseaworthiness. Nieves's amended complaint does not expressly allege that Cooper Marine or Kinder Morgan Marine Services breached a duty to provide a seaworthy vessel. Moreover, Nieves's brief does not respond to the defendants' arguments on this point. To the extent that Nieves intended to advance a claim based upon unseaworthiness, it is dismissed as barred under section 905(b). Cooper Marine and Kinder Morgan Marine Services' motions for summary judgment on this point are granted.

10

the barge and delivered it to Kinder Morgan Bulk Terminals. These defendants argue that section 905(b)'s exclusivity provision preempts Nieves's Arkansas wrongful death and survival claims. This argument is not without support. *See Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1060 (9th Cir. 1997) (holding that section 905(b) preempted a longshoremen's remedies under California's wrongful death statute).

The nonvessel defendants argue that the Supreme Court's decision in *Yamaha* creates a category for Nieves that prevents supplementation by state law. In *Yamaha*, the court held that state law remedies are available to "nonseafarers" injured in territorial waters. *Yamaha*, 516 U.S. at 215-16, 116 S. Ct. at 628. In a footnote, the Court defined "nonseafarers" as "persons who are neither seamen covered by the Jones Act, 46 U.S.C.App. § 688 (1988 ed.), nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*." *Id.* at 205 n.2, 116 S. Ct. 623. The defendants contend that the Court in *Yamaha* extended state-law remedies to "nonseafarers" only and that Nieves, as a longshoreman, does not fall in that category.

Nieves responds that general maritime law has long permitted plaintiffs to supplement their federal remedies with state law remedies. Nieves acknowledges that injured persons who are covered by the Jones Act or the Death on the High Seas Act are generally not allowed to supplement their federal statutory remedies with state law remedies. Under the Longshore Act, Nieves argues, vessel owners and nonvessel owners are treated as third-parties and governed by general maritime negligence principles, not by any recovery scheme under the Longshore Act. Nieves further argues that *Yamaha* did not address whether seafarers have recourse to state-law remedies but instead addressed only "whether it was *Moragne*'s design to terminate recourse to state remedies when nonseafarers meet death in territorial waters." *See id.* at 211 n.8.

11

The Court need not wade through this complicated area of overlapping jurisdictions and state-law supplementation because admiralty law is clear on at least this point: state law cannot contradict general maritime law and may supplement general maritime law only to the extent it is consistent with general maritime law's principles and policies. *See Yamaha*, 516 U.S. at 215 n.13, 116 S. Ct. at 628. State law must give way if it "works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *S. Pac. Co. v. Jensen*, 244 U.S. 205, 216, 37 S. Ct. 524, 529, 61 L. Ed. 1086 (1917). The only points of difference between Arkansas law and general maritime law relating to Nieves's claims are points of contradiction and not supplementation. Once these conflicts are removed, Arkansas law mirrors general maritime law. It is then of little practical significance to determine under which sovereign's laws Nieves is recovering. *See O'Melveny & Myers*, 512 U.S. 79, 84, 114 S. Ct. 2048, 2053-54 (1994) ("In any event, knowing whether 'federal law governs' in the *Kimbell Foods* sense—a sense which includes federal adoption of state-law rules—does not much advance the ball. The issue in the present case is whether the California rule of decision is to be applied . . . or displaced, and if it is applied it is of only theoretical interest whether the basis for that application is California's own sovereign power or federal adoption of California's disposition.") (citations omitted).

Arkansas's wrongful death statute expressly permits recovery for "any mental anguish resulting from the death to the surviving spouse and beneficiaries of the deceased." Ark. Code Ann. § 16-62-102(f)(1). As explained above, *Gaudet* expressly excluded damages for mental anguish or grief, holding that they are "not compensable under the maritime wrongful-death remedy." 414 U.S. at 587 n.17, 94 S. Ct. at 816. Arkansas's rule allowing recovery of mental anguish is therefore

in conflict with general maritime law. Accordingly, Nieves is not permitted to recover for any mental anguish or grief. *See Bardwell v. George Sharp, Inc.*, No. CIV.A. 93-3590, 1995 WL 386894, at *6 (E.D. La. June 28, 1995).

Arkansas's wrongful death statute permits recovery to beneficiaries that include nondependent family members. *See* Ark. Code Ann. § 16-62-102(d) (listing brothers and sisters of the deceased as beneficiaries). Nieves seeks recovery on behalf of all statutory beneficiaries. The *Gaudet* Court, though, uniformly spoke in terms of dependents. *Gaudet*, 414 U.S. at 584, 94 S. Ct. at 814 (holding that "under the maritime wrongful-death remedy, the decedent's dependents may recover damages for their loss of support, services, and society, as well as funeral expenses"). The overwhelming majority of courts limit recovery under the general maritime wrongful-death remedy to dependent beneficiaries. *See Wahlstrom v. Kawasaki Heavy Indus., Ltd.*, 4 F.3d 1084, 1091 (2d Cir. 1993) (collecting cases). Arkansas law conflicts with general maritime law on this point as well, and Nieves may not recover on behalf of nondependent beneficiaries.

Nieves also seeks damages under Arkansas's survival statute. The statute specifically allows "a decedent's estate to recover for the decedent's loss of life as an independent element of damages." Ark. Code Ann. § 16-62-101(b). Nieves provides the Court with no case permitting loss of life damages in a case involving a survival action. Courts have permitted recovery for loss of the quality or enjoyment of life in some personal injury suits involving nonfatal injuries. *See Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1325 (2d Cir. 1990) (upholding jury verdict in Jones Act case awarding loss of life damages and asking only "whether, as a matter of federal common law or under the Jones Act, damages for 'loss of enjoyment of life' are separate from or 'included' in damages for pain and suffering"); *Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1169 (5th Cir. 1982)

13

(upholding jury verdict in Jones Act case awarding loss of life damages). The Second Circuit, though, has squarely addressed this question and determined that damages may not be awarded in a survival action for loss of enjoyment of life. *Wahlstrom*, 4 F.3d at 1094. Nieves's claim for loss of life damages under Arkansas's survival statute contradicts general maritime law.

Finally, Nieves's claim for punitive damages under Arkansas law is dismissed. The standard for an award of punitive damages in Arkansas is set by statute:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> > (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or
> >
> > (2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code Ann. § 16-55-206. These factors must be proved by clear and convincing evidence. *Id.* § 16-55-207. Neither negligence nor gross negligence justifies punitive damages. *Alpha Zeta Chapter of Pi Kappa Alpha Fraternity by Damron v. Sullivan*, 293 Ark. 576, 587, 740 S.W.2d 127, 132 (1987). The Arkansas standard for punitive damages is as demanding or more than the federal standard discussed above, which Nieves fails to satisfy.

## CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment are DENIED IN PART and GRANTED IN PART. Document #130; Document #132; Document #138; Document #141; Document #144; Document #157; Document #163; Document #166. Any claims based on

14

the unseaworthiness of the vessels of Cooper Marine or Kinder Morgan Marine Services are dismissed with prejudice. Nieves's claims for recovery of mental anguish are dismissed with prejudice. Nieves's claims on behalf of nondependent beneficiaries are dismissed with prejudice. Nieves's claim for loss of life damages is dismissed with prejudice. Nieves's claims for punitive damages are dismissed with prejudice. Nieves's claims for loss of society damages under general maritime law are not dismissed.

IT IS SO ORDERED this 11th day of August, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE